**STATE BOARD OF ELECTIONS and Bob Babbage, Secretary of State, Appellants,**

v.

**Joseph M. FISCHER, Appellee.**

**No. 95–SC–849–TG.**

Supreme Court of Kentucky.

Nov. 22, 1995.

William B. Pettus, Robert V. Bullock, Assistant Attorneys General, Frankfort, for appellants.

Joseph M. Fischer, Fort Thomas, for appellee.

David Yewell, David C. Condon, Rummage, Kamuf, Yewell, Pace & Condon, Owensboro, for amicus curiae, Jody Richards

and the Legislative Research Commission as Appellants.

LAMBERT, Justice.

This appeal is from the order of the Campbell Circuit Court entered on September 12, 1995, whereby it denied appellants' motion to amend its permanent injunction of November 23, 1994. Said injunction prohibited, in accordance with this Court's opinion in *Fischer v. State Board of Elections*, Ky., 879 S.W.2d 475 (rendered June 23, 1994) [1], the conduct of any election pursuant to the district boundaries set forth in KRS Chapter 5, after January 3, 1995.

This particular controversy arose upon the August 3, 1995, resignation of Representative Donna Shacklette of Jefferson County. By virtue of the injunction referred to hereinabove, the State Board of Elections, et al., was prohibited from conducting special elections to fill that or any other vacancy in the General Assembly. The State Board of Elections sought amendment of the permanent injunction to permit a special election to fill the vacancy created by Representative Shacklette's resignation.

The trial court reviewed this Court's decision in *Fischer*, which it characterized as unambiguous, and quoted the following portion:

> This cause is remanded to the trial court with directions to enter a Declaratory Judgment in conformity herewith and with directions to permanently enjoin the conduct of any election pursuant to the district boundaries set forth in KRS Chapter 5 after January 3, 1995.

*Fischer*, 879 S.W.2d at 481. Believing this Court's opinion to have been rendered with full contemplation of the possibility of a vacancy by virtue of death, disability or resignation, the trial court declined to modify its injunction. Correctly analyzing our decision, it said:

> If it had been the intent of the Supreme Court to permit the 1991 districts to continue in place until the end of the 1994–1996 term, it could have said so. Certainly, anyone, including the Supreme Court, could anticipate the probability of a midterm resignation, death or disability in a collection of 138 persons. Yet the Supreme Court clearly held that the districts were invalid effective the date the present legislature was sworn into office. The clear language and spirit of the Supreme Court Opinion indicates that once the present legislature took office last January [1995], it would be incumbent upon the General Assembly to remedy the problems associated with the voided districts, including the potential problem of a resignation.

Slip op. at 2–3.

■ We could scarcely embellish upon what has been said heretofore in *Fischer* and in the order of the Campbell Circuit Court herein under review. Our opinion declared the unconstitutionality of the 1991 Legislative Reapportionment Act. Upon our determination that such was unconstitutional, there is no legal theory whereby it or any portion of it could be used to establish a district for the purpose of filling a vacancy. As of January 3, 1995, there were no legislative districts as that concept is normally understood. There was but a single House district and a single Senate district comprising the whole of the Commonwealth of Kentucky.

As recognized by the trial court, the occurrence of a vacancy did not come as a surprise. We believed that our opinion on this fundamental constitutional principle (Section 33 of the Constitution of Kentucky) rendered in June of 1994 would be followed in a timely manner and that any vacancy which might occur would be of a limited duration. It has now been nearly seventeen months since rendition of our decision in the underlying case.

■ As to deprivation of representation of those persons who live in what was formerly the 40th Representative District, we simply

1. We reiterate our central holding, as follows: [T]he General Assembly can formulate a plan which reduces to the minimum the number of counties which must be divided between legislative districts.... The mandate of Section 33 is to make full use of the maximum constitutional population variation as set forth herein and divide the fewest possible number of counties.

*Fischer*, 879 S.W.2d at 479.

say that their lack of an elected representative is an unfortunate by-product of this circumstance. We take comfort, however, in the knowledge that Jefferson County presently has seventeen Representatives and seven Senators and that as stated in *Anggelis v. Land,* Ky., 371 S.W.2d 857 (1963), the citizens of the old 40th District are not without representation:

> Although a Senator [or Representative] is required by Section 32 of the Kentucky Constitution to be a resident of the district from which he is elected, once he is elected he represents generally all the people of the state and specifically all the people of his district as it exists during his tenure in office. Certainly no one would suggest that a Senator [or Representative] represents only those persons who voted for him.

*Id.* at 859.

For the foregoing reasons, the order of the Campbell Circuit Court is affirmed in all respects. Its permanent injunction entered on November 23, 1994, shall remain in full force and effect.

STEPHENS, C.J., and FUQUA, LAMBERT, LEIBSON and STUMBO, JJ., concur.

REYNOLDS, J., concurs in result only and files a separate opinion in which WINTERSHEIMER, J., joins.

WINTERSHEIMER, J., concurs in result only and files a separate opinion in which REYNOLDS, J., joins.

REYNOLDS, Justice, concurring.

Having unwaveringly dissented from the Court's reasoning in the original opinion, I, however, concur in the result of this opinion based upon the accepted principle "law of case doctrine."

The state must agonizingly twist while facing the uncertainties of state elections at large to determine its representatives. Regrettably, despite the passage of 17 months, the legislature has been afforded but one, ever so brief, window of opportunity to effect constitutional redistricting.

WINTERSHEIMER, J., joins this concurring opinion.

WINTERSHEIMER, Justice, concurring.

I join the concurring opinion of Justice Reynolds. However, I wish to restate the view of my dissenting opinion in the original case. Equality of population should be the most important element in any reapportionment. I continue to believe that *Hensley v. Wood,* 329 F.Supp. 787 (1971) provides the best solution to reapportionment problems.

REYNOLDS, J., joins this concurring opinion.